[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] STATEMENT OF THE CASE
The plaintiffs, John P. McCarthy and Betsy W. McCarthy appeal from the defendant Zoning Board of Appeals' decision to deny an application appealing a previous ruling of the city's Zoning Enforcement Officer.
 FACTS
The McCarthys are Milford residents. (Return of Record [ROR], A.) On June 16, 1998, the McCarthys were notified by the Milford ZEO, Linda Stock, that they were in violation of Section 2.5.2 of the Milford zoning regulations which states that only one principal building shall be located on a lot. (ROR, D.) Specifically, the ZEO found that a "trailer coach," a white Four Winds with a CT#93903 camper plate, was parked on the McCarthys' premises on 5 Beacher Road. (ROR, D.) According to the Milford zoning regulations, a "trailer coach" is construed as a dwelling and subject to the zoning regulations as they pertain to dwellings. (Milford Zoning Regulations [MZR], § 4.1.1.14.)
On June 26, 1998, the McCarthys filed an application with the ZBA appealing the ZEO's decision. (ROR, A.) After a public hearing on July 14, 1998, the ZBA voted in favor of the McCarthys' application. (See ROR, M; H.) Because the vote was3-2, however, the motion to approve the appeal did not carry and the ZEO's decision was not overturned. (ROR H; I.) Notice of this decision was published on July 17, 1998. (ROR, H; I.)
Subsequently, the McCarthys filed the present appeal against the Milford ZBA. A hearing was held before the court, Sylvester, J., on July 14, 1999. CT Page 14473
 JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board to the superior court. "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . ." (Citations omitted.) Bridgeport Bowl-O-Rama, Inc. v. Zoning Board,195 Conn. 276, 283, 487 A.2d 559. "[Such] provisions are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Brackets in the original.) Simko v.Zoning Board of Appeal, 206 Conn. 374, 377, 538 A.2d 202 (1988).
Aggrievement
At the hearing, this court found that the plaintiffs were aggrieved for purposes of maintaining this appeal.
Timeliness and Service of Process
Section 8-8(b) provides that an appeal must be commenced by service of process within fifteen days from the date that notice of the decision was published. In the present case, the notice of the ZBA's decision was published on July 17, 1998. (ROR, H; I.) Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." According to the sheriff's return, the writ, summons, citation and appeal were served on the city clerk, Alan Jepson, the clerk for the Zoning Board of Appeals, Beverly Hays, and the chairman of the ZBA, Errol Van Hise, on July 31, 1998.
Accordingly, the appeal was timely commenced by service of process on the proper parties and the court has jurisdiction over the appeal.
 SCOPE OF REVIEW
The action of a zoning enforcement officer is not entitled to any special deference by the board of appeals. Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 89, 626 A.2d 744 (1993). "Our case law further reinforces the de novo nature of the hearing conducted by the zoning board of appeals. It is the board's responsibility, pursuant to the statutorily required hearing, to CT Page 14474 find the facts and to apply the pertinent zoning regulations to those facts. . . ." (Citations omitted.) Id., 90. "In doing so, the board is endowed with a liberal discretion. . . ." Id.
General Statutes § 8-7 provides that a zoning board of appeals hearing such an appeal "may reverse or affirm wholly or partly or may modify any order, requirement or decision appealed from and shall make such order, requirement or decision as in its opinion should be made in the premises and shall have all the powers of the officer from whom the appeal has been taken but only in accordance with the provisions of this section." General Statutes § 8-7. "A trial court must, however, determine if the board acted arbitrarily, illegally or unreasonably. . . ." (Citations omitted.) Fleet National Bank v. Zoning Board ofAppeals, 54 Conn. App. 135, 139, ___ A.2d ___ (1999). The court's review of conclusions of law is plenary and the court must decide whether the conclusions are legally and logically correct and supported by the facts in the record. Id.
 ARGUMENTS
The McCarthys appeal on the grounds that the ZBA's decision was illegal, arbitrary and capricious in that "a) the defendant, by denying the appeal of the plaintiff, deprived the plaintiffs of their property rights and of the value, reasonable use and enjoyment of their property without due process of law; b) the decision of the defendant ignored and is contrary to, the substantial weight of the evidence in the record; c) the decision of the defendant is contrary to and inconsistent with the treatment by the Zoning Board of Appeals, Zoning Enforcement Officer, City Planner and Staff of similar recreational vehicles parked on residentially zoned property within the City of Milford, subjecting the Plaintiffs to unequal treatment under the law, and a violation of their rights to equal protection and due process; d) the Defendant's denial of said appeal was not supported by law or fact and was not supported by appropriate evidence, maps, drawings or surveys as required by the Zoning regulations of the Planning and Zoning Board of the City of Milford; [e] the Defendant incorrectly applied and acted inconsistently with its own regulations by denying said appeal; [f] the defendant otherwise acted illegally, arbitrarily and in abuse of the discretion vested in it."
 DISCUSSION
CT Page 14475
The McCarthys argue that the ZBA acted illegally, arbitrarily and capriciously because it acted inconsistently with, and contrary to, the Milford zoning regulations. According to the plaintiffs, the vehicle they own is a recreational vehicle (RV) used for travel/camping purposes and not for dwelling purposes. The McCarthys also claim that their vehicle is independently classified as a camper by the State of Connecticut Department of Motor Vehicles. The McCarthys further argue that the Milford zoning regulations do not specify whether an RV is permitted or excluded in a residential zone. Thus, the McCarthys conclude that the ZEO's classification of the plaintiffs' vehicle as a trailer coach (and, by definition, a dwelling) is outside the regulations and improper since the regulations do not specifically address the type of vehicle owned by the plaintiffs.
The ZBA, conversely, maintains that the zoning regulations do address the type of vehicle owned by the plaintiffs. As such, the ZBA argues that the McCarthys have not shown that the ZBA misinterpreted the zoning regulations as applied to the vehicle in question.
The ZEO' determined that the McCarthy vehicle constituted a dwelling under the regulations and therefore was violative of the regulation's restriction of one principal building per lot. (MZR, § 2.5.2). The ZBA failed to overrule the ZEO's determination. The question before the court, accordingly, is whether the record supports the ZBA's decision.
The following definitions are pertinent to the present appeal:
A "Camp Trailer" is defined as "A trailer designed, manufactured and used solely for camping or pleasure purposes or for the purpose of transporting personal property of the owner and bearing a current `Camp Trailer' registration." (MZR, p. XI-3.)
"Trailer Coaches" are defined as "A vehicle[1] with or without motive power designed to be self-propelled or to be drawn by a motor vehicle and to be used for human habitation or for the carrying of a person. Includes mobile homes." (MZR, p. XI-15.)
A "Recreational Vehicle" (under "Vehicle, Recreation") "is any towed or self-propelled residence, coach, trailer, truck body converted for residential occupancy primarily designed or CT Page 14476 utilized for seasonal and/or vacation uses." (MZR, XI-16.)
Comparing these three definitions, it is noteworthy that a "camp trailer" is the only definition which describes a type of vehicle that does not have the ability to be self-propelled. Both "trailer coaches" and "recreational vehicles" are specifically defined as capable of being self-propelled. Pursuant to the definitions in the Milford Zoning Regulations, a "trailer coach, or manufactured mobile home . . . which remains on any lots within the limits of this City for more than 48 hours within a six month period shall be construed to be a dwelling . . ." (MZR, p. XI-5.) A recreational vehicle or a camp trailer are not specifically enumerated in the definition of a dwelling. Finally, the regulations provide for, as an accessory use, "[o]ne camp trailer, as defined herein, except that no occupancy of such vehicle shall be permitted while located in any front yard, nor within six feet of any lot line." (MZR, § 3.1.3.9.) There is no explicit accessory use for trailer coaches or recreational vehicles.
Construing the various definitions as a whole, the Milford regulations differentiate between motorized vehicles (trailer coaches, recreational vehicles) and those that are not motorized (camp trailers). While the camp trailers are explicitly allowed on a residential lot as accessory uses, the motorized vehicles are not. Moreover, the definitions in the regulations provide a further distinction in specifying vehicles that may be used for habitation (trailer coaches) or residential occupancy (recreational vehicles) as opposed to those which are used exclusively for transporting equipment or supplies (camp trailers). It is noteworthy that "habitation" and "occupancy" are synonymous with the act of residing. In this respect, both "trailer coaches" and "recreational vehicles" are defined by the potential of being dwellings "used exclusively for residential occupation."
Applying these definitions to the present facts, the McCarthy vehicle is a motorized vehicle capable of self-propulsion. Though the McCarthys have offered evidence that the vehicle in question is not a primary residence (ROR, G; L, pp. 1, 9), it is evident from the record that the McCarthy vehicle has been used for residential occupancy in the past, though not on the Milford site. Specifically, the evidence shows that when used for purposes of travel, the McCarthy vehicle can become a dwelling with a kitchen, bathroom and bedrooms. (ROR, G.) CT Page 14477
While the zoning regulations are silent as to whether a vehicle with the potential for future occupancy is to be considered a dwelling, the ZEO determined that it did. (ROR, L, pp. 5-7.) As evident from the 3-2 vote in favor of the plaintiffs' application to the ZBA, not all of the ZBA members agreed with the assessment of the ZEO. (ROR, M..) The ZBA members in favor of the appeal concluded that the recreational vehicle was not a dwelling while parked on the Milford site and, moreover, concurred with the McCarthys' assessment that the regulations were vague and unclear. (ROR, M, p. 1-2.) The ZBA, however, did not overrule the ZEO decision by a clear majority of four as required under General Statutes § 8-7.
"Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court . . . The court is not bound by the legal interpretation of the ordinance by the [commission]." (Citations omitted.)Northeast Parking v. P. Z. Com. of Windsor Locks,47 Conn. App. 284, 293, 703 A.2d 797, cert. denied, 243 Conn. 969 (1997). "Rather, the court determines legislative intent from the language used in the regulations." Id.
"The principles governing interpretation of zoning regulations are well settled. Promulgation of zoning regulations is a legislative process, although local in scope. . . ." (Citations omitted.). New London v. Zoning Board of Appeals,29 Conn. App. 402, 406, 615 A.2d 1054, cert. denied, 224 Conn. 922
(1992). When interpreting a local legislative enactment, the court "looks for the expressed intent of the legislative body in the language it used to manifest that intent. If it is clear and unambiguous on its face, we will look no further." Id. "Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms. . . . The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. . . ."Northeast Parking v. P. Z. Com. of Windsor Locks, supra,47 Conn. App. 293.
"Whenever possible, in interpreting zoning regulations, the language of said regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The CT Page 14478 regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable and bizarre results." Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705-6, 546 A.2d 823
(1988). "When construing a zoning regulation, our primary goal is to ascertain and give effect to the intent of the local legislative body as expressed in the regulations as a whole. It is neither our purpose nor our intention, however, to engage in a microscopic examination of these regulations in an attempt to uncover technical infirmities and render the regulations ineffective." New London v. Zoning Board of Appeals, supra,29 Conn. App. 407.
The requirement for a reversal of the ZEO by a majority of four places the burden on the plaintiff to show that the underlying action was incorrect beyond a reasonable doubt. Heckv. Westbrook Zoning Board of Appeals, Superior Court, judicial district of Middletown at Middlesex, Docket No. 082786 (March 11, 1998, Foley, J.). In the present case, the McCarthys have failed to do so and the order of the ZEO remains intact. Oczkowski v.Oxford Zoning Board of Appeals, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 044041 (May 3, 1995, Curran, J.) The court cannot substitute its judgment for that of the administrative agency. Raczkowski v. Zoning Commission,53 Conn. App. 636, 640, ___ A.2d ___ (1999.) Accordingly, since there is no evidence of arbitrary or illegal action in the denial of the application by the board, the ZBA's decision must stand.
The McCarthys also argue that the ZBA acted illegally, arbitrarily and in abuse of its discretion in that the actions of the board deprived the plaintiffs of their property rights and of the reasonable use and enjoyment of their property without due process.[2] Specifically, the McCarthys argue that the ZBA has acted in a manner inconsistent with past policy and that such action constitutes a violation of the equal protection clause. To support their equal protection argument, the plaintiffs refer to the record and cite a letter which purports to have previously allowed one recreational vehicle per lot. (ROR, G.)
The plaintiffs argument is without merit. For one, "[m]ere laxity in the administration of the law, no matter how long continued, is not and cannot be held a denial of the equal protection of the law. To establish arbitrary discrimination CT Page 14479 inimical to constitutional equality, there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity. . . ." (Citations omitted.) Bianco v. Darien,157 Conn. 548, 559, 254 A.2d 898 (1969). For the plaintiffs to prevail on an equal protection argument, they must show "a pattern of discrimination consciously practiced." Id.
The only item in the record that purports to be evidence of an allegedly unequal treatment of the plaintiffs is a letter from the Chairman of the ZBA, Errol Van Hise, advising that "at the previous hearing it was decided that one recreational vehicle to be customary and that was clarified again." (ROR, G.) Such a letter, alone, however, does not create a pattern of discrimination consciously practiced. Carini v. Zoning Board ofAppeals, 164 Conn. 169, 174, 319 A.2d 390 (1972). For one, the letter, standing alone, makes no reference to the zoning regulations at issue in the previous case. Furthermore, even if the court was able to interpret Van Hise's statement in context, the letter, nonetheless, does little to provide evidence of a conscious conduct which would discriminate against the McCarthys.
The plaintiffs' final argument concerning the ZBA's decision is that the ZBA acted arbitrarily, illegally and in abuse of its discretion in that it acted in a manner "contrary to the substantial weight of the evidence on the record and acting contrary to the law and facts and in a manner not supported by the appropriate evidence, maps and drawings as required by the zoning regulations."
As discussed above, the Milford regulations can be interpreted in a manner consistent with the ZEO's finding that the McCarthy vehicle was prohibited by regulation. Because the ZBA failed to overrule the ZEO's decision by a majority of four votes, the ZEO decision remained in effect. The plaintiffs have not shown why a failure to override the ZEO with a four person majority is arbitrary or illegal.
Accordingly, the court hereby dismisses the plaintiffs' appeal.
BY THE COURT,
Joseph H. Sylvester Judge Trial Referee CT Page 14480